AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>ISMAEL VALDES<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 13-8143-WM<br>)<br>)<br>) |

FILED by _____ D.C.
MAR 0 8 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 5, 2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) | Knowingly and Intentionally Possessing with Intent to Distribute a controlled substance, namely Methylone, a Schedule I controlled substance. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Joshua Meuse, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __March 8, 2013__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__   United States Magistrate Judge William Matthewman
*Printed name and title*

## AFFIDAVIT
## JOSHUA J. MEUSE
## SPECIAL AGENT
## DRUG ENFORCEMENT ADMINISTRATION

I, Joshua J. Meuse, (the "Affiant"), being duly sworn, state:

## INTRODUCTION

1. I am an Investigator or Law Enforcement Officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent (SA) with the Drug Enforcement Administration (DEA) and employed since March 28, 2010. I am currently assigned to the DEA West Palm Beach Resident Office. Prior to my employment with DEA, I served as a Police Officer with the Gloucester Police Department in Gloucester, Massachusetts from December 2004 to December 2005. I am currently assigned to investigations dealing with all aspects of importation, manufacturing, and distribution of illegal drugs, to include 4-Methyl-N-Ethylcathinone, a/k/a "4-MEC," a/k/a "Molly," Methylone, MDMA, powdered MDMA, a/k/a "M," cocaine, and marijuana.

2. While employed with the DEA, I have received ongoing training to include classes in Basic Telecommunication Exploitation, Internet Telecommunication Exploitation and Wire and Oral Telecommunication Interceptions. As a SA with the DEA, I have conducted investigations of, and have been instructed in investigative techniques, concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing, or using controlled substances, and conspiracies to commit

1

these offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively. Based upon this experience, and through the experience of other agents and detectives with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have also conducted physical surveillances, electronic surveillances, and wire surveillances. Additionally, I have arrested individuals for various drug violations and have spoken with a number of drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. As a result of my law enforcement experiences, and the experience of other agents and detectives I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions. Instead, they use coded language to disguise their conversations about illegal narcotics transactions and also frequently communicate via text messages. I am also aware that cellular telephones provide illegal narcotics traffickers with mobile access and control over their illegal trade. They often utilize cellular telephones to communicate with one another in furtherance of their illegal narcotic activities via voice, text, and e-mail message communications. I also know that illegal narcotics traffickers routinely utilize false information when registering their cellular telephones and utilize cellular telephone numbers and cellular telephones for short periods of time. I have also conducted investigations involving the identification of co-conspirators through the use of telephone records and bills, electronic mail and digital media, financial records, drug ledgers, photographs, and other documents.

3. The information contained in this affidavit is based on my personal participation in this investigation, from information provided to me by other agents and analysts for DEA and other

federal, state and local law enforcement agents and officers, as well as cooperating sources of information. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint for Ismael VALDES I have not set forth every fact known to me regarding this investigation. Rather, I have set forth only the facts I believe are necessary to establish probable cause for the arrest of Ismael VALDES for the offense of Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## FACTS IN SUPPORT OF PROBABLE CAUSE

4. Since approximately May of 2012, I have been involved with an investigation targeting individuals in Palm Beach, Broward, and Miami-Dade Counties in Florida, Orlando Florida, Tennessee, and elsewhere who are importing and distributing Methylone, a/k/a "Molly" (hereinafter referred to as Molly) a Schedule 1 controlled substance, 4-Methyl-N-Ethylcathinone, a/k/a "4-MEC," a/k/a "Molly," a Schedule I controlled substance analogue, and MDMA from China and Canada into South Florida.

5. Specifically, in early September of 2012, several controlled, recorded, and monitored calls were made between a Confidential Source (hereinafter referred to as CS) and Ismael VALDES (hereinafter referred to as VALDES) regarding the purchase of 1,000 capsules containing Molly powder for $3,600.00 U.S. currency.

6. Based upon the afore-mentioned controlled calls on September 7, 2012, the CS arranged to purchase 1,000 capsules containing "Molly" powder from VALDES in return for $3,600.00. VALDES agreed to meet the CS in Boca Raton, Florida to complete the sale of the 1,000 capsules containing "Molly" powder.

7. As a result, on September 7, 2012, at approximately 11:45 a.m., law enforcement agents established surveillance at the residence of VALDES located in Miami, Florida. At that time, agents observed a silver Honda Civic with attached Florida Tag with assigned number #108KMM parked in front of the residence. The Honda Civic was identified as registered to VALDES. At approximately 2:20 p.m., agents observed VALDES exit the residence and enter the Honda Civic. VALDES was observed heading northbound from Miami, Florida.

8. At approximately 3:00 p.m., agents established surveillance at the agreed upon meet location for the purchase of the 1,000 capsules containing the "Molly" powder which was located at a K-Mart store parking lot in Boca Raton, Florida within the Southern District of Florida. Later, VALDES was observed driving the Honda Civic into the parking lot. At that time VALDES parked the Honda Civic next to the vehicle containing the CS and an undercover law enforcement officer. Prior to arriving at the meet location and being provided with official advanced funds, the CS had been searched for the presence of illegal narcotics and/or currency. None were located. The CS then exited the undercover vehicle and entered the passenger side of VALDES's Honda Civic. The CS then exchanged $3,600.00 in official advanced funds for approximately 1,000 capsules containing "Molly" powder from VALDES. The CS then exited VALDES' vehicle and VALDES left the parking lot.

9. The CS then returned to the undercover vehicle and gave the 1,000 capsules purchased from VALDES to the undercover law enforcement officer. The CS and the undercover officer traveled to a predetermined location where the CS was again searched for illegal narcotics and/or currency. None were located. The 1,000 capsules containing the suspected Molly powder were then field tested which yielded a positive result for MDMA and had a gross weight of approximately 320

4

grams. Based upon my training and experience, as well as the totality of the investigation thus far I know that when the Schedule I controlled substance Methylone, a/k/a "Molly" is field tested it produces a positive result for the presence of MDMA.

10.     During the week of October 1, 2012, several additional controlled, recorded and monitored telephone conversations occurred between the CS and VALDES. During these conversations, VALDES agreed to sell the CS an additional 3,000 capsules containing "Molly" powder for $10,000.00 in U.S. currency. Ultimately, on October 5, 2012, VALDES agreed to meet the CS in Boca Raton, Florida to conduct the sale of the 3,000 capsules containing the "Molly" powder.

11.     Specifically, on October 5, 2012, at approximately 11:45 a.m., VALDES informed the CS that he (VALDES) was leaving Miami and was en route to Boca Raton, Florida. VALDES and the CS agreed to meet at a Denny's restaurant located in Boca Raton, Florida within the Southern District of Florida. At that time, agents established surveillance in the area of the Denny's restaurant and waited for VALDES' arrival. At approximately 12:45 p.m., agents observed VALDES driving into the Denny's restaurant parking lot in the same silver Honda Civic noted above. VALDES then parked in the Denny's parking lot and exited his vehicle. VALDES then opened the trunk of the Honda Civic and retrieved a cardboard box from the trunk. At that time, law enforcement agents approached VALDES and seized the cardboard box which was found to contain approximately 3,000 capsules containing suspected "Molly" powder.

12.     The approximate 3,000 capsules containing the suspected "Molly" powder were then field tested which yielded a positive result for MDMA and had a gross weight of approximately 1,051 grams. Based upon my training and experience, as well as the totality of the investigation thus

far I know that when the Schedule I controlled substance Methylone, a/k/a "Molly" is field tested it produces a positive result for the presence of MDMA.

Based upon the aforementioned, I respectfully submit that probable cause exists to believe that VALDES has committed the offense of Possession with Intent to Distribute a controlled substance, namely Methylone, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

_____
Joshua J Meuse, Special Agent
U.S. Drug Enforcement Administration

Sworn to before me this
8th day of March, 2013.

_____
WILLIAM MATTHEWMAN
U.S. MAGISTRATE JUDGE
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 13-8143-WM

UNITED STATES OF AMERICA

vs.

ISMAEL VALDES,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
Jennifer C. Millien
Assistant United States Attorney
Florida Bar No. 171700
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
TEL: (561) 820-8711
FAX: (561) 805-9846